### LAND v. BANKS.　(No. 760.)

(Court of Civil Appeals of Texas. Beaumont. March 17, 1922. Rehearing Denied May 3, 1922.)

1. **Taxation** ☞810(3)—**Evidence held not to compel conclusion notice of tax sale was given.**

Where defendant relied upon a tax sale to his predecessor in title, executed in 1881, evidence that the tax collector who made the deed and the grantee named therein were both dead, that the records of the county had been destroyed by fire, that the deed reciting notice of the sale was duly given, and that the grantee and those claiming under him had been in possession ever since, that no claim to

the property since the execution of the deed had been made by the former owner until a deed thereto was executed by the heirs 25 years thereafter, *held* not to compel a conclusion that the notice required by the statute in force when the tax deed was executed had been published or otherwise given.

2. **Taxation** ☞788(5)—**Recitals of notice of tax sale in tax deed issued in 1881 are not evidence notice was given.**

Recitals in tax deed issued in 1881, at which time the law governing the effect of such deeds was 9 Gammell's Laws, p. 46, § 8, providing that the deed should vest good title in the purchaser, but not making it evidence that the notice of sale required by 3 Sayles' Early Laws (2d Ed.) p. 518, art. 4292, § 6, had been given, cannot be considered as evidence that the notice was given.

3. **Taxation** ☞788(5)—**Const. 1876 did not make recitals in tax deed evidence of fact of notice of sale.**

Const. 1876, art. 8, § 13, requiring the Legislature to provide for the sale of land for taxes by deed of conveyance, which shall vest a good and perfect title in the purchaser, subject to be impeached only for fraud, does not give to the recital of a tax deed executed thereunder, that the notice of sale required by law had been published or given, any probative force.

4. **Taxation** ☞788(5)—**Grantee of tax deed holder must prove notice of sale was given as required.**

The successors in title of the purchaser under a tax deed executed in 1881 must prove that the notice of the tax sale was published as required by 3 Sayles' Early Laws, art. 4292, § 6, or that there was no newspaper published in the county at that time, and that the notice was duly posted as required by that article if there was no newspaper.

5. **Adverse possession** ☞79(4)—**Void tax deed to possessor's remote grantor does not give "color of title" under three years' statute; "title."**

A party in possession of land under a recorded warranty deed from a grantor whose title was derived from a void tax deed did not have either title or color of title required to establish his right to the land under the three-year statute of limitations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Color of Title; Title (Of Property).]

6. **Trespass to try title** ☞6(1)—**Party entitled to some interest can recover against party having none.**

Where plaintiff, in an action of trespass to try title, proved that his predecessors in title had succeeded to the title of one who was one of the heirs of a former owner, but was not shown to be the only heir, so that plaintiff had some interest in the property, he is entitled to recover as against a defendant, who is not shown to have had any interest in the property.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Trespass to try title ☞11—Defendant cannot go behind undisputed common source of title.**

In trespass to try title, the defendant cannot attack plaintiff's title by going behind the undisputed common source of title.

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Trespass to try title by Stanley Banks against J. W. F. Land. Judgment for plaintiff for recovery of the land, but allowing defendant the cost of improvements made thereon in good faith, and defendant appeals from the judgment awarding the land to plaintiff, and plaintiff files cross-appeal from the judgment awarding the cost of the improvements. Affirmed.

Norman, Shook & Gibson, of Rusk, for appellant.

R. B. Banks, of San Antonio, for appellee.

HIGHTOWER, C. J. This was an action of trespass to try title by the appellee, Stanley Banks, against appellant, J. W. F. Land, and one W. G. Matthews. The suit was filed in the district court of Angelina county October 26, 1917, and involves 269 acres of land, a part of the James Moffett one-third league survey located by virtue of certificate No. 271 issued by the board of land commissioners of Nacogdoches county to James Moffett in 1838, and the survey was patented by the state of Texas to James Moffett in 1847. In his petition, as plaintiff, the appellee claimed ownership to the entire 269 acres here involved, and described the same by specific metes and bounds. Appellant, Land, as defendant, answered by certain special exceptions, plea of not guilty, and also interposed as a defense the statutes of limitation of three and five years. In addition he specially pleaded improvements in good faith, a plea of estoppel, and also that he had paid out approximately $90 taxes on the land since claiming it, and he alleged that appellant should be required to imburse him for such taxes. He also vouched in as a warrantor the defendant G. W. Matthews, and prayed for recovery against Matthews in the event he (appellant) should be cast in the suit. Matthews filed no answer.

The case was tried before the court without a jury, and judgment was rendered in favor of appellee, Banks, against appellant, Land, for the 269 acres of land sued for, and in favor of appellant on his suggestion of improvements in good faith for $900. It is unnecessary to further mention Matthews. Land excepted to the judgment, and gave notice of appeal, which he has duly prosecuted to this court, and Banks has filed a cross-assignment by which he complains of the action of the trial court in awarding Land anything on his suggestion of improvements in

good faith. Appellant, Land, presents a number of assignments of error, some of which are followed by several different propositions, but after careful consideration we have reached the conclusion that the main and controlling contentions made by appellant may be said to present but three questions.

It is shown by the record before us, without dispute, that the parties claimed the land in controversy from a common source, namely, one John Crutcher, who in 1854 acquired title to a one-half undivided interest in the Moffett survey if, in fact, he ever acquired any title at all. It was and is the contention of appellee that title to the land in controversy never passed out of John Crutcher during his lifetime, and that such title was inherited by his heirs subsequent to his death, and that appellee holds the title to same by purchase through mesne conveyances from such heirs.

Appellant, Land, claims the property under a tax deed executed by J. C. Everitt, as tax collector of Angelina county, to H. G. Lane on July 16, 1881. That deed was introduced in evidence, and recites that the Crutcher interest in the Moffett tract was sold for taxes due on the land for the years 1878 and 1879, amounting to $7.60.

The undisputed evidence adduced upon the trial below was sufficient to show that John Crutcher lived in Fayette county, Tex., where he died prior to or about the commencement of the Civil War. The evidence further shows affirmatively that John Crutcher had never married, and that he left certainly as one of his heirs a brother, Henry Crutcher, who died in 1876. The evidence fails to show affirmatively whether either of John Crutcher's parents survived him, and whether there were any other brothers or sisters. In October, 1909, Mary D. Crutcher and Kate Crutcher Hudson, the latter being joined by her husband pro forma, executed a deed to E. G. Banks conveying all the interest that was claimed by the grantors in the Moffett survey by inheritance from Henry Crutcher, who was the brother, as before stated, of John Crutcher. Mary D. Crutcher, the record shows, was the surviving widow of Henry Crutcher, and Kate Crutcher Hudson the daughter of Henry Crutcher. The record shows that whenever interest in the Moffett survey was inherited by Henry Crutcher was in Mary D. Crutcher and Kate Crutcher Hudson at the time of the execution of said deed to E. G. Banks.

The first and second assignments of error present practically the same legal question, which is, in substance, that the judgment of the court was erroneous because appellant showed a good and perfect title to the land in controversy from the sovereignty of the soil, and by mesne conveyances, under a val-

id tax deed from the tax collector of Angelina county to H. G. Lane.

In reply to this contention on the part of appellant, it is appellee's contention that appellant failed to show the necessary prerequisites to support the tax deed from the tax collector to Lane, under which alone appellant asserts title, and that therefore said deed was ineffectual to convey to Lane title to any portion of the interest owned in the Moffett survey by John Crutcher or his heirs, and that such tax deed in no manner affected the Crutcher title. Appellee further contends that the tax deed to Lane was also void for lack of sufficient description.

As bearing on the question as to whether the tax deed from the tax collector to Lane had the effect to pass the title to the Crutcher interest in the Moffett survey, we find in the statement of facts, among other things, the following, from which we quote:

"It was proven on the trial of the case that J. C. Everitt, the person who was tax collector at the time of the sale of the land in question for taxes, is dead and has been dead for more than 10 years. It was also proven upon the trial of the case that J. B. Cochran and M. Stevens, who were tax assessors from and including 1878 and 1879 and to 1881 are dead, and have been dead for more than 10 years. It was also proven on the trial of the case that H. G. Lane was dead, and had been dead for 7 or 8 years. It was further proven upon the trial of the case that all the tax records of Angelina county, Tex., the tax rolls and renditions and tax records for the years 1878, 1879, 1880, and 1881, and back of that time, had been lost and destroyed by fire, which destroyed the whole courthouse.

"Defendant offered in evidence and proved from the commissioners' court records a due and legal levy and assessment of the county taxes for each year in the amount for which the property was sold, which, taken and added to the amount of the state taxes shown by the general laws at the time of the assessment, the sale being made for the exact amount shown to be levied for said years by general laws for state purposes, as shown by the records of the commissioners' court of Angelina county, Tex., for county purposes, without including any interest thereon on either amount. Defendant then introduced in evidence, and proved by certificate from the comptroller's office that the land had been duly rendered for and assessed for taxes by an agent of the John Crutcher heirs and had been duly and legally assessed in all respects in accordance with the laws existing at said time, and due and proper return of same, and of delinquent record made to the commissioners' court of Angelina county, Tex., and to the comptroller of the state of Texas, in accordance with the laws governing such matters at the time said levy and assessment was made, and the amount shown as assessed by the assessor and returned to the comptroller, being as stated, the same amount as that shown in the deed for which sale was made, when the state levy was added to the levy made for county purposes. * * *

"It was further proven by the defendant that the state and county taxes levied against the 728 acres of land, described in assessment and tax deed, had never been paid for 1878 and 1879, nor by said plaintiff, Banks, or by the Crutcher heirs, either for 1878 or 1879, or for any years since said date, and that they amounted to $300 for said time."

Appellee has filed a motion in this court praying this court to strike out the second paragraph of the statement of facts above quoted, it being the contention of appellee in the motion, substantially, that such paragraph is manifestly nothing more than a legal conclusion on the part of the trial judge, and in the nature of things cannot be the statement of the material facts, proof of which was necessary to give the tax deed validity. Appellee, in this connection, argues:

"Appellee fails to see how the court can determine whether or not the levy made by the commissioners' court was due and legal, without having a copy of said levy to pass on, or how the court is in a position to determine that the certificate from the comptroller's office showed that the land had been 'duly rendered for and assessed for taxes by an agent of the John Crutcher heirs, that it had been duly and legally assessed in all respects in accordance with the law existing at said time, and due and proper return of same and of delinquent record made to the commissioners' court of Angelina county, Tex., and to the comptroller of the state of Texas, in accordance with the laws governing such matters at the time said levy and assessment was made,' without having said certificate and said return and said delinquent record to determine if said taxes were in fact due and legal."

We are inclined to agree with the contention of counsel for appellee that the paragraph of the statement of facts objected to was but a legal conclusion, and fail to see how the court could deduce it in the absence of the very records upon which such legal conclusion must necessarily be based. In view, however, of the manner in which the question is raised before us, we have to decline to sustain appellee's motion by striking out the matter complained of, and for the purposes of our disposition of the case will consider the legal conclusion pointed out as if it were a statement of fact instead.

The tax deed under which appellant asserts title to the land in controversy we here copy in full, as follows:

"The State of Texas, County of Angelina.

"Know all men by these presents: That whereas, certain taxes are due the state of Texas and the county of Angelina by Crutcher heirs, as assessed against them for the years 1878 and 1879, upon the following described tract or parcel of land, viz. seven hundred and thirty eight acres of the James Moffett headright of land Abstract No. 422, situated in the aforesaid county of Angelina and state of Texas, which taxes amounted to the sum of seven dollars and sixty-six cents as appears

from the tax roll of said county for the years 1878 and 1879; and whereas, the time provided by law for the payment of said taxes having expired and though demanded of the said Crutcher's heirs by proper legal notice, the same remaining unpaid, I, J. C. Everitt, tax collector of Angelina county, in compliance with the law and by virtue of the ·tax roll aforesaid levied upon and seized certain tract of land as belonging to the said Crutcher's heirs and hereinafter described to be sold to make the same amount of said taxes yet unpaid, together with costs accrued and have advertised the said lands in the manner and for the time required by law; and whereas, in pursuance with the said advertisements I did offer said lands for sale at public auction at the time, place and in the manner required by law, when H. G. Lane bid the sum of twelve dollars and sixty-six cents for 738 acres of said land which sum being sufficient to make the said amount of said unpaid taxes, together with dollars, cents, penalties due and five dollars, ――― cents costs accrued thereon and the costs of this deed which being the highest and best bid offered for the least number of acres of land, the same was struck off to him the said H. G. Lane:

"Now, therefore, for and in consideration of the sum of twelve dollars and sixty-six cents to me in hand paid, the receipt of which is hereby acknowledged, I have by virtue of the power vested by law and by these presents bargained, sold, transferred and conveyed, and by these presents do bargain, sell, transfer and convey unto him, the said H. G. Lane, his heirs all the right, title, interest and estate which the said Crutcher heirs had at the time when the assessment before mentioned was made to the following described tract or parcel of land, viz. seven hundred and thirty-eight acres of James Moffett headright of land, abstract No. 422, situated in the aforesaid county of Angelina and state of Texas.

"To have and to hold unto him the said H. G. Lane, his heirs and assigns the above and foregoing tract of land, together with all and singular the rights, privileges and appurtenances to the same belonging or in any way appertaining in fee simple forever, provided nevertheless that the said land herein conveyed may be redeemed by the said Crutcher heirs (owner) or by their heirs or their legal representatives within two years from this date in the manner provided by law.

"Witness my hand and seal of office, this the sixteenth day of July, A. D. 1881. ·

"[Seal]          J. C. Everitt,

"Tax Collector of Angelina County."

The above deed was duly acknowledged for record by J. C. Everitt, as tax collector, on the date of its execution, and was shortly thereafter duly recorded.

It is appellee's contention that, even if this court should give effect to the trial court's legal conclusions as shown in the second paragraph of the statement of facts above quoted, that still the trial court's judgment in this case, in so far as the same is against appellant, must be affirmed, for the reason that appellant wholly failed to prove that notice of the sale at which the land was sold for taxes was given as required by law, and also failed to show that due and proper return of such sale was made and shown in the commissioners' court minutes, as required by law.

The law in force at the time the tax sale in question was made governing the notice that should be given in such a sale will be found in 3 Sayles' Early Laws of Texas (2d Ed.) p. 518, as follows:

"Art. 4292. * * * 6. If the taxes upon any land or town lots in this state are not paid before the expiration of the sixty days provided for in section 4 of this act, the collector of taxes shall seize, levy upon and sell such land or town lots, whether belonging to residents or nonresidents, for the payment of all taxes and penalties due thereon, together with all costs which have or may accrue thereon; and he shall advertise the same for sale in some newspaper published in the county, for three successive weeks, if there be one, and if there be no newspaper in the county, then by posting said advertisement for thirty days at the courthouse door, and three other public places in the county where the land or lots are situated; giving in said advertisement such description as is given to the same on the certified statements furnished him by the commissioners' court, as furnished the court by the comptroller of public accounts; giving the name of the owner, if known, and if unknown, say 'unknown,' together with time, place and terms of said sale; said sale to be for cash, to the highest bidder, at public outcry, at the courthouse door; which sales shall be between legal hours, on the first Tuesday of the month," etc.

We fail to find in this record any proof that notice of the tax sale here in question was published in any newspaper in Angelina county, as was clearly required by the law if there was a newspaper published in the county at that time; nor do we find in this record that there was no newspaper published in said county at said time, and that the notice of sale was posted at the courthouse door and the three other public places in the county, as required by the law at that time.

[1] It is not appellant's contention, as we understand it, that the notice of sale required by law at the time could be dispensed with, and yet the tax deed have validity; nor is it denied by appellant that the burden of proof of such notice rested upon appellant; but, as we understand appellant's contention, it is substantially that, in view of all the facts and circumstances in this case, appellant met such burden, and met it with such convincing proof by facts and circumstances that the trial court could not reasonably find or conclude that the required notice of the tax sale was not given. These facts and circumstances or the most material ones upon which appellant relies in support of such contention, may be mentioned as follows:

[2] In the first place, it was shown that the tax collector who made this sale, and the party to whom he sold it, died long prior to the trial, and their evidence, therefore, could not be produced. Also that approximately 40 years had elapsed since the tax deed was executed, and that during all of such period there was no assertion of claim by Crutcher or any one claiming title through or under him, save and except the deed executed by Mary D. Crutcher and Kate Crutcher Hudson in October, 1909. Also that there was an assertion of ownership and claim under the tax deed, which was more or less active, by Lane and those under mesne conveyances from him to the Crutcher interest in the land. Also that the deed itself expressly recites that notice of the tax sale, as required by law, was given before the sale was made; that, in view of such facts, which we admit are without substantial dispute in the record, the proof was not only sufficient to warrant the trial judge in finding that the required legal notice of the tax sale was given, but that they compelled such conclusion or finding on his part, and that no other finding or conclusion could be reasonably made. As supporting such contention, able and energetic counsel for appellant have cited many authorities, all of which we have given careful consideration, but have concluded that none of the Texas authorities sustain appellant's contention that the proof in this case was of such character and force as to compel a conclusion or finding by the trial judge that the required notice of the tax sale at the time it was made was, in fact, given.

Many of the decisions of this state cited by counsel for appellant in support of their contention on this point were where land was sold under judicial decrees or in probate proceedings and in such cases our appellate courts have held that, after a long lapse of time, when it would be unreasonable to require or expect affirmative proof of some essential element entering into such decrees or probate proceedings to be made, the courts have been liberal in indulging presumptions in support of the validity of such sales. The very first case cited by appellant in support of such contention is that of White v. Jones, 67 Tex. 640, 4 S. W. 161. The deed there in question was one by an administrator, acting under orders of a probate court. The quotation from the syllabus will reflect at once the question there before the court:

"The records of a court, if they be in existence, or properly certified copies thereof, are the best and generally the only competent evidence of their contents. But when 25 years after the destruction of the probate records and papers pertaining to the administration of the estate, and after the death of the administrator, in a suit by heirs to recover land claimed to have been regularly sold under order of court by the administrator or the production of the defendants' deed from the administrator made 25 years before, containing recitals, which, if true, showed the regularity of the sale, and its confirmation by the court, in connection with evidence that a subsequent administrator returned a purchase-money note referred to in the deed on his inventory, and that the note was paid to him, it will be presumed that the court and its officers did their duty, and the validity of the sale was sustained."

Almost innumerable such decisions by the appellate courts of this state might be collated but, from the very earliest time at which the question was raised for decision in this state, the liberal rule which has been applied in upholding sales of land under ordinary judicial and probate proceedings has not been extended in favor of tax sales by a mere collector of taxes, acting under the naked power conferred upon him by law. And, instead of any presumption being indulged in favor of the validity of a deed by a tax collector, the rule has always been in this state to the contrary, and nothing that the law required to give validity to a tax collector's deed has been presumed, except where such deeds were made under statutes quite different from the statute in force at the time of the execution of the deed in the instant case. For instance, the deed under consideration in Wright v. Giles, 60 Tex. Civ. App. 550, 129 S. W. 1167, which is the second case relied upon by appellant in support of its contention now under consideration, was a deed by a tax collector when the act of 1860 was the law. Among other things said by the court in that case was the following:

"The act of 1860 (Laws 1860, c. 72, § 5), in force at the time the tax deed was made to B. M. Giles, provides: 'That the assessor and collector shall, when any property has been sold for the payment of taxes, make and execute a deed for said property to the person or persons purchasing the same, which, when recorded according to law, shall be prima facie evidence that all the requisites of the law have been complied with in making such sale, and such deed shall also be prima facie evidence that all the prerequisites to the exercise of the power to make said sale have been complied with.' * * * The act of 1860, the law under which the tax deed in question was executed, makes the deed prima facie evidence that both the power to sell existed and that all the requisites of the law had been complied with. The cases just cited related to the discussion of deeds where the law only made the [deed] prima facie evidence that the requisites of the law had been complied with, and by analogy we hold that the tax deed to B. M. Giles vested in him a fee-simple title to the land; there being no evidence to rebut the prima facie case made by the introduction of the deed."

If the deed under consideration in the instant case had been made under the law of 1860, Wright v. Giles would be clearly in point here, and, following as it does many

other decisions construing deeds by tax collectors, which, by the law in force at the time, made such deeds prima facie evidence that all legal requirements for a valid tax sale had been complied with, would be decisive of appellant's contention here. But the law in force at the time of the execution of the tax deed by the tax collector of Angelina county to Lane did not make such deed, regardless of its recitations, prima facie evidence that any of the prerequisites to a valid tax deed had been complied with, and such deed, regardless of its recitations, constituted no proof, prima facie nor otherwise, nor even a presumption, that any of the legal requisites to its validity had been complied with. The statute in force on July 16, 1881, when the tax collector executed the deed to Lane, in so far as applicable on this particular point, will be found in 9 Gammell's Laws of Texas, p. 46, § 8, c. 17. We quote as follows:

"Section 8. The collector of taxes shall execute and deliver to the purchaser, upon the payment of the amount for which the estate was sold, and costs and penalties, a deed for the real estate sold; which deed shall vest a good and absolute fee in said land or lots to the purchaser, if not redeemed in two years as herein provided for; which deed shall state the cause of the sale, the amount sold, the price for which the real estate was sold, the name of the person, firm, company or corporation against whom the taxes were assessed provided the name is known, and, if unknown, say 'unknown'; and when real estate has been sold, he shall convey, subject to the right of redemption provided for in the following section, all the right and interest which the former owner had therein at the time when the assessment was made, or when the sale was made."

[3] It will be observed at once that nowhere in the quoted statute was it provided that the tax collector's deed should be prima facie evidence of any prerequisite to a valid tax sale, or that the same should be any evidence whatever. It is true, also, that section 13 of article 8 of the Constitution of 1876 was in force at the time of this tax sale, which section provides as follows:

"Sec. 13. Provision shall be made by the first Legislature for the speedy sale of a sufficient portion of all lands and all property for the taxes due thereon, and every year thereafter for the sale of all lands and other property upon which the taxes have not been paid, and the deed of conveyance to the purchaser for all lands and other property thus sold shall be held to vest a good and perfect title in the purchaser thereof, subject to be impeached only for actual fraud; provided, that the former owner shall, within two years from date of the purchaser's deed, have the right to redeem the land upon payment of double the amount of money paid for the land."

The statute in force in 1881 and the Constitutional provision just quoted are cited by appellant in support of his contention, but we fail to see anything, either in that statute or the Constitutional provision, that would attribute to the tax deed here in question any probative force whatever. In the case of Meredith v. Coker, 65 Tex. 29, the Supreme Court, speaking through Justice Robertson, announced the rule to be that:

"Independent of constitutional or statutory law, a tax deed does not affect title, unless the authority of the maker of the deed is shown by proof of the performance of all precedent requisites."

Among other things in that case, the court called attention to section 13, art. 8, of the Constitution of 1876, in the following language:

"Sec. 13, art. 8, of the Const. of 1876, requires the Legislature to prescribe laws for the sale of property for taxes, and provides that the deed to the purchaser for property thus sold, shall vest title defeasible only for actual fraud.

"No state may deprive any person of his property without due process of the law. Sec. 1 of 14th amendment of U. S. Const. The Legislature, or the people in convention, may provide the effect of a tax deed as evidence. Blackwell on Tax Tit. 83, and note 1. But the power to confiscate property by the sanctification of a tax deed does not exist. Cooley on Tax. 355; Burroughs on Tax. § 120; Blackwell on Tax Tit. 83; Cooley's Const. Lim. 459, and note 2.

"The Constitution, in the section referred to, only states the effect of the deed when the law has been complied with; it dispenses with no proof.

"The law in force when the deed in this case was made, and now in force, declared that 'the deed shall vest a good and perfect title.' Manifestly this provision dispenses with none of the proof required."

In the case of Lewright v. Walls, 55 Tex. Civ. App. 643, 119 S. W. 721, the court, among other things, said:

"To the validity of any sale of land for taxes, it is imperatively necessary that the land shall have been subject to taxation, that it shall have been actually assessed for taxation, and a land tax levied, and that, as to the official proceedings leading up to a sale, there should be at least prima facie evidence of * * * compliance with the provisions of law on the subject; and, as a general rule, it may be said that a party claiming land under a tax sale for taxes must show affirmatively that the law under which the sale was made has been substantially complied with, not only in the sale itself, but in all the anterior proceedings."

In Clayton v. Rehm, 67 Tex. 54, 2 S. W. 46, we find this language:

"That the deed of the collector without proof of the compliance with all the requirements of the law necessary to call into exercise his authority to make the sale is no evidence of title in the party claiming under it, is no longer an open question."

In Dawson v. Ward, 71 Tex. 72, 9 S. W. 106, the syllabus states the rule in this state relative to tax collectors' deeds as follows:

"Our courts have determined that from the tax deed no presumption is drawn that the requisite proceedings upon which the power to sell arises have been taken."

In Purington v. Broughton (Tex. Civ. App.) 158 S. W. 227, Dawson v. Ward, and Clayton v. Rehm, supra, are referred to, and the rule there announced applied.

[4] Basing our conclusion upon the authorities above mentioned, which we believe to be the law of this state applicable to the point now under consideration, notwithstanding decisions to the contrary in other jurisdictions, as well perhaps as some elementary writers, we hold that, in order for appellant to have sustained the tax deed in question as a conveyance of the Crutcher title to Lane, it was incumbent upon appellant to prove as one of the legal requisites to such title that notice of the tax sale was published in a newspaper in Angelina county, as required by the law then in force, or that, if there was no newspaper published in the county at such time in which such notice could be given, that then it was incumbent upon appellant to prove that fact, and also to prove that notice of such sale was posted at the courthouse door of the county, and at three other public places in the county, for a period of 30 days, in compliance with the law in force at that time; and we further hold that neither the period of time intervening between such tax sale and the trial, nor the failure on the part of the Crutcher heirs to assert ownership to the land in question, as we have shown above, nor the recitations in the tax collector's deed itself, nor the assertion of claim by Lane and those holding through him of ownership to the land, constituted conclusive proof that the required notice of the tax sale was given, nor were all these facts and circumstances, as well as others in the record, sufficient to compel a finding and conclusion on the part of the trial judge that such notice was given. We therefore overrule the first and second assignments of error, and hold that the tax deed relied upon by appellant for title must fail.

[5] By the third assignment it is complained that the court was in error in refusing to render judgment in favor of appellant on his plea of limitation of 3 years.

The defendant Matthews had conveyed the land in controversy to appellant, Land, on May 19, 1913, and the deed was forthwith recorded, and the record shows Matthews claimed the land by regular conveyances connecting whatever title he had with the tax collector's deed, and the record further shows, without dispute, that Land paid all taxes due upon the land as they accrued for a full period of three years and more before this suit was filed. In view of these undisputed facts, it was appellant's contention that he showed title or color of title under the 3-year statute. If we are right in disposing of the first and second assignments, in concluding that appellant failed to show that all prerequisities to a valid tax sale were complied with by the tax collector in making the sale to Lane, then, under the authorities of this state, as we construe them, appellant cannot have title or color of title to the land in controversy under the 3-year statute of limitation. We understand it to be the settled rule of this state, as announced by the appellate courts, that before a party can successfully interpose the 3-year statute of limitation, based upon a mere tax collector's deed like the deed in question, he must prove that all the legal requisites to a valid tax sale were complied with; otherwise he can have neither title nor color of title under the 3-year statute, regardless of the fact that all other elements, such as possession and payment of taxes, might be present.

In Telfener v. Dillard, 70 Tex. 139, 7 S. W. 847, it was said:

"A recorded tax deed, under sale not complying with every legal requirement, is not such color of title as will avail a party claiming under the three years' statute of limitation."

In Gillaspie v. Murray, 27 Tex. Civ. App. 580, 66 S. W. 252, it is held:

"A tax deed is not a support for a plea of three years' limitation under color of title, without evidence that it was executed in completion of a sale regularly made for taxes duly levied and assessed."

In Lamberida v. Barnum (Tex. Civ. App.) 90 S. W. 698, the court held:

"It is only when proof that the taxes were duly assessed, which were a charge upon the land, and that the successive steps were taken which led to a lawful sale therefor, at which he, or some one under whom he claims, became the purchaser, that a tax deed will support the three years' statute of limitation. The burden of proof in such case is on the claimant."

In O'Hanlon v. Morrison (Tex. Civ. App.) 187 S. W. 695, it is said:

"The deed of a tax collector, without proof of compliance with all the requirements of the law conferring authority to make the sale, is no evidence of title of the party claiming under it. This is not an open question in this state. * * * The deed was properly introduced in evidence on the question of limitation, but, in order to prescribe, under the three-year statute, it must show title or color of title, and this is not shown, under the authorities of this state, until the necessary precedent requirements of the law are shown, authorizing its execution. There was no title shown under the three-year statute."

241 S.W.—20

The authorities quoted from those which they cite, we think compel the conclusion on our part that the trial court in this case, upon the facts before him, did not err in denying to appellant recovery of the land in controversy on his plea of limitation of three years, and appellant's assignment on that point is overruled.

[6] Appellant's next main contention is, substantially, that the trial court was in error in permitting appellee to recover the land in controversy, or any portion thereof, because, substantially, appellee claimed the entire 269 acres as his own, and that the evidence failed to show that appellee had title thereto from all the heirs of John Crutcher, the common source, but showed, at the most, by the evidence that he had such undivided interest as he acquired, if any, by E. G. Banks' purchase from Mary D. Crutcher and Kate Crutcher Hudson, who claimed through Henry Crutcher as the brother and heir of John Crutcher. It is true, as we have hereinbefore stated, that there is no affirmative proof in this record to the effect that Henry Crutcher was John Crutcher's only heir at the time of John Crutcher's death, because the evidence did not show, affirmatively, whether John Crutcher's parents were living or dead at John's death, nor did it show, affirmatively, whether there were other brothers and sisters of John Crutcher at the time of his death; but it is certain from the record that Henry Crutcher was an heir of John Crutcher, and that he certainly inherited some interest in John Crutcher's one-half of the Moffett survey. And, if there were other heirs than Henry Crutcher at John Crutcher's death, the record makes certain that the appellee here is a tenant in common with them to the land in controversy here, and whether appellee's interest be divided or undivided, or whatever the extent of it may be, as such cotenant he could maintain a suit in trespass to try title, notwithstanding his claim of the entire survey in his own right, against appellant, who, the record in this case shows, was claiming the land under a void tax deed, or at least one not shown to have any validity, and, such being the case, appellee was entitled to recover the whole of the tract as against appellant, who was, in the language of some of the decisions, a "stranger" to the title, or "shown to have no title,". or was a "naked trespasser." This was held as early as the decision in the case of Croft v. Rains, 10 Tex. 523; May v. Slade, 24 Tex. 205. See, also, Padgett v. Guilmartin, 106 Tex. 551, 172 S. W. 1101; McCarthy v. Houston Oil Co. of Texas (Tex. Civ. App.) 221 S. W. 309; and Hill v. Whitworth (Tex. Civ. App.) 162 S. W. 434.

Among other cases cited by appellant in support of his contention on this point is that of Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S. W. 924, an opinion by the Commission of Appeals of this state. In that case Steddum, it seems, sued the Kirby Lumber Company in trespass to try title for an undivided one-half interest in certain lands patented to one William Nash as the assignee of Samuel Steddum. The trial court peremptorily instructed a verdict in favor of defendant. In disposing of the case, the Commission of Appeals said:

"The Court of Civil Appeals, as appears from its opinion, on rehearing sustained this action of the trial court upon the ground that the plaintiff failed to show that he was the owner of a definite interest in the land; that, while the proof was sufficient to show that the plaintiff owned an undivided interest in the land, it failed to show the extent of that interest, and for that reason the plaintiff was not entitled to recover."

It is apparent from the decision as a whole that the plaintiff in that case was suing for an undivided interest, and that it appeared upon the trial that the defendant, in fact, had title to some of the land, and under such facts the court held that before the plaintiff could recover in that case he would be required to show the extent of his interest in the land as against the defendant, who also held title to a portion thereof. Such holding was but the application of the rule obtaining in this state in like cases, but we do not consider that the decision is authority for appellant's contention in this case, because, as we have shown, appellant was claiming the land sued for by appellee under a void tax deed, and had no other claim to the land, and he was not entitled to prescribe under the 3-year statute of limitation, and therefore acquired no title in that way. Therefore the court was not in error in holding that appellee was entitled to recover the entire 269 acres as sued for by him as against appellant, who had no title whatever to the land, and appellant's assignment on this point is overruled.

It is true appellant makes the contention that he did show some interest in the land in this case, but we have given the record most careful consideration, and, without going into the details upon which appellant's contention in this respect is based, we hold that no title or interest in this land was shown by the appellant, which disposes of appellant's entire contention on this point.

[7] There are several other assignments of error than those we have above mentioned, but by most of them appellant seeks to attack appellee's title by an attempt to go behind the undisputed common source, which he cannot do, and these assignments, as well as all other matters raised by appellant, are overruled.

As to the cross-assignment made by appellee that the trial court was in error in awarding judgment in favor of appellant in

the sum of $900 on his suggestion and plea of improvements in good faith, we hold that the same cannot be sustained, for the reason that in our opinion the evidence in the record was sufficient to justify such finding and judgment by the trial court, and, without discussing the evidence in detail, we simply overrule the assignment and affirm the judgment as a whole.

It has been so ordered.