S. A. Silverman v. Mary E. Landrum et al.

Decided October 19, 1898.

**1. Agency—Death of Principal—Survival of Power of Sale.**

The power of sale conferred by a trust deed securing a debt could be executed after the death of the maker, where no administration was had on his estate and the time for taking out same had expired.

**2. Deed of Trust—Sale—Parol Extension—Notice—Burden of Proof.**

As against the purchaser of the legal title to land at a sale under the powers conferred by a trust deed, defendants, asserting that such sale was in violation of a parol agreement, for a valuable consideration, extending the time for payment of the secured debt, had the burden of proving that the purchaser had notice of such agreement.

**3. Error—Reversal—Remand.**

Where a defense which there was evidence tending to establish was not submitted,—defendant being erroneously allowed judgment on another issue,—the appellate court, on reversing, will remand the cause.

Appeal from Falls. Tried below before Hon. Sam R. Scott.

*Finks & Gordon, Rice & Bartlett,* and *John N. Wharton,* for appellant.

*Martin & Eddins* and *Z. I. Harlan,* for appellees.

COLLARD, Associate Justice.—Appellant's statement of the case is substantially correct, and is deemed sufficient for the purposes of the questions decided, with such additions as we make. The statement is as follows:

"This was an action of trespass to try title in the ordinary form, brought by the appellant, S. A. Silverman, on May 28, 1895, to recover 100 acres of land in Falls County, out of the southeast quarter of the George Allen league, and for reasonable rents of the land in controversy since April 2, 1895, alleged in appellant's petition to be of the value of $150 per annum, against Mary E. Landrum, wife of Samuel Landrum, and the following children of Samuel Landrum,—John B. Landrum, Edna Antonette Landrum, Rowena Landrum, Sarah Rebecca Landrum, by a former marriage,—and also against Martin Diaz and R. D. Moreing, tenants in possession when the action was brought.

"Plaintiff's title to the land in controversy grew out of a loan of $600 to Samuel Landrum and Mary E., his wife, evidenced by their bond of October 1, 1885, payable to the order of Joseph B. Fisher of New York City, at the National Bank of Commerce in New York City, five years

after date, with interest from date at the rate of 6 per cent per annum, payable semi-annually. Landrum and wife executed trust deed of even date, in which the premises in controversy were conveyed to J. B. Watkins, trustee, to secure this loan. At the same time, Landrum and wife executed a second deed of trust to M. J. Dart to secure interest coupons payable to J. B. Watkins or order at the office of the J. B. Watkins Land Mortgage Company in New York City. Both deeds authorized a sale of the premises if default was made in the payment of the interest or principal. Default was made in the payment of the loan at maturity, but no action was taken by the company to enforce payment under the trust deed until April 2, 1895. The property was sold under the first trust deed at the last mentioned date, and plaintiff became the purchaser.

"The trust deed provided, among numerous other provisions, that in case the original trustee, Watkins, died or refused to act, the then acting sheriff of Dallas County should succeed to the trust and be clothed with all the powers and authority vested in the original trustee; and further, that the recitals in the conveyance to the purchasers should be full evidence of the matters therein stated, and all prerequisites to the sale shall be deemed to have been performed. Samuel Landrum died July, 1890, leaving his wife, Mary E., and the above named children surviving him. No one qualified as his administrator. On April 2d and prior thereto, there was $250 or $255 of the loan remaining unpaid. J. B. Watkins, trustee, having refused in writing to act, the company instructed Ben E. Cabell, the then acting sheriff of Dallas County, and substitute trustee, to sell the property at public auction in accordance with the provisions of the trust deed, in satisfaction of his balance; and he, after giving the notice stipulated in the trust deed, and having fully complied with all the terms and provisions of same, proceeded to sell the property, as above stated, at public auction for cash on April 2, 1895, and it was knocked off to plaintiff, who was the highest and best bidder, for $355. Plaintiff paid this sum to the substitute trustee and on the same day received from him a warranty deed on behalf of Samuel Landrum and wife to the premises,—the power to warrant being conferred on the trustee by the trust deed. On the trial plaintiff introduced and read in evidence a chain of title from the sovereignty of the soil down to Samuel Landrum; the bond; trust deed; J. B. Watkins' refusal to act; and substitute trustee's deed to plaintiff,—all duly acknowledged and recorded in the deed records of Falls County.

"The defendants filed a general demurrer, general denial, and pleaded not guilty to plaintiff's petition; and at the trial introduced in evidence a deed of the date of June 22, 1876, by Samuel Landrum and Mary E., his wife, conveying to E. C. Stuart and E. H. Featherstone, as trustees, 920 acres of land owned by him in Texas, describing the same by metes and bounds, offered for the purpose of showing an outstanding title in the trustees—said trust was duly accepted in writing by the trustees July 4, 1876, and the acceptance made a part of the trust conveyance—and in the same connection offered subsequent instruments executed by

Landrum and wife to Benson Landrum and William Shankle, as trustees, executed after the death of Featherstone and Stuart, appointing them to carry out the terms of the trust and their acceptance of same. [The provisions of this deed, pertinent to the issues raised in this case, will be hereinafter referred to and quoted.]

"Defendants further relied upon a parol agreement between Milliard Story, agent of the J. B. Watkins Company, and Benson Landrum and William Shankle, defendants' trustees, on October 4, 1892, to extend the time of payment of the mortgage debt until the fall of 1895, and that the premises had been sold in violation of this agreement, the consideration of this agreement being certain rent notes, amounting to about $300 or probably a little over, delivered to Story as collateral security, at the date of the contract—the understanding being that the rent notes so delivered should be collected by the company in 1893, and applied to the payment of the interest then due, and about half the principal sum; that defendant should pay the interest which should accrue from the fall of 1893 to the fall of 1894, in the fall of the latter year, and the remainder of the debt, principal and interest, in the fall of 1895.

"Plaintiff claims that this contract, as shown by defendant's testimony, was conditional, and that the continuance of the extension was made to depend upon the payment of the interest in 1894. Defendants dispute this, and claim that the contract was an absolute one, to extend the payment of the loan to the fall of 1895. Defendants, in addition, introduced some evidence tending to prove that the land in controversy was the homestead of Samuel Landrum. The trial resulted in a verdict and judgment for defendants for the land in controversy, and a finding and judgment in favor of plaintiff for $355, the purchase price of the land, with legal interest from the 22d day of April, 1895, with a lien on the land in controversy to secure this sum, and a foreclosure of same. From this judgment plaintiff appeals."

It was not shown that Silverman had notice of the agreement to extend the time of the execution of the deeds of trust at the time he purchased the land, paying a valuable consideration therefor, nor is there any testimony impeaching his good faith in the purchase.

The land in controversy was the separate estate of Samuel Landrum, purchased by him before his marriage. He died in July, 1890, more than four years before the sale of Silverman, and there was no administration upon his estate. Defendants sued are his heirs at law.

*Opinion.*—The death of Samuel Landrum did not affect the power to sell under the deed of trust. The time in which administration upon his estate might have been taken out had expired, so the right of the heirs to have the estate settled under our probate laws, was not interfered with. Heirs of John Rogers v. Watson, 81 Texas, 403, 404. It follows that Silverman, by his purchase at the sale, took the legal title to the land, to defeat which, defendants must show that he had notice of the agreement to extend the time of enforcement of the deed of trust by sale. The

equity set up by defendants must be proven by them, and they must show that Silverman was bound by it, by notice to him of its existence. Saunders v. Isbell, 5 Texas Civ. App., 513; Baldwin v. Root, 90 Texas, 546; Barnes v. Jamison, 24 Texas, 362. So much for the burden of proof.

As to the proposition that Silverman, purchasing the land for a valuable consideration, without notice that the time of the enforcement of the deed of trust had been deferred by the parol agreement set up by the defendants, should be protected as an innocent purchaser, it is, we think, the law. Jones on Mort., 1899; 26 Am. and Eng. Enc. of Law, 937, 938; Beatie v. Butler, 21 Mo., 313; Holland v. Bank, 8 Am. Rep. Ann., 533.

There was error in refusing a charge, declaring the law in effect, as stated in the foregoing.

The question arises in other forms. As shown by the record, Silverman was not permitted by the court to testify that he had not heard of the parol agreement to extend the time of selling under the trust deed, but this ruling seems to have been upon the ground that the case, as to evidence, was closed. We do not discuss that ruling, as doubtless upon another trial the testimony will be offered at a time when no such objecjection can be made.

There are other questions in the case, as, for instance, that of the land being the homestead of Landrum and wife at the time of the execution of the deed of trust and the sale, which, if true, would defeat the suit of plaintiff for the land.

The court did not submit the question, though, as appellant says in his brief, there was some testimony tending to establish homestead. Hence we reverse the judgment of the lower court and remand the cause.

*Reversed and remanded.*